**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO.**

DDR HOMESTEAD LLC, a Delaware limited liability company,

Plaintiff,

v.

CHALAK-MIAMI 2, LLC d/b/a GENGHIS GRILL, a Delaware limited liability company; AKASH BHAKTA; CHETAN BHAKTA; RONAK PARIKH; NIKUNJ BHAKTA; and RICARDO WARMAN,

Defendants.
_______________________________________/

# COMPLAINT

Plaintiff DDR Homestead LLC ("DDR"), for its Complaint against Defendants Chalak-Miami 2, LLC d/b/a Genghis Grill ("Tenant"), Akash Bhakta, Chetan Bhakta, Ronak Parikh, Nikunj Bhakta, and Ricardo Warman (collectively, the "Guarantors"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages resulting from breach of a DDR lease, from breaches of guarantees benefiting DDR related to the rental of property at Homestead Pavilion in Homestead, Florida (the "Shopping Center") and from Guarantors' fraudulent inducement of DDR to contract based on Guarantors' material misrepresentations of the status of their assets and/or finances prior to entering into the Guarantees (as hereinafter defined) and prior to execution of the Lease (as hereinafter defined).[1]

[1] This action was originally filed in Ohio state court but DDR dismissed the Ohio action and refiled in this Court because Defendants challenged personal jurisdiction in Ohio. Defendants'

**THE PARTIES**

2. DDR is the owner of and landlord of the Shopping Center. DDR is a Delaware limited liability company with its principal place of business in Beachwood, Ohio. DDR's sole member is DDR Corp., an Ohio corporation that also manages the Shopping Center for Plaintiff DDR. Accordingly, Plaintiff DDR is an Ohio citizen for diversity jurisdiction purposes.

3. Tenant is a Delaware limited liability company that, upon information and belief, has a mailing address of 18900 Dallas Parkway, Suite #125, Dallas, TX 75287 with its registered agent having a mailing address of 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, FL 33410. Tenant leased a single unit restaurant at the Shopping Center and it or its agent operated a Genghis Grill restaurant.

4. Akash Bhakta ("Guarantor I") is an individual who resides in Texas and is a guarantor.

5. Chetan Bhakta ("Guarantor II") is an individual who resides in Texas and is a guarantor.

6. Ronak Parikh ("Guarantor III") is an individual who resides in Texas and is a guarantor.

7. Nikunj Bhakta ("Guarantor IV") is an individual who resides in New Mexico and is a guarantor.

8. Ricardo Warman ("Guarantor V") is an individual who resides in Florida and is a guarantor.

---

statements from the Ohio action made clear that they purposefully availed themselves of Florida jurisdiction.

**JURISDICTION AND VENUE**

9. This Court has diversity jurisdiction under 28 U.S.C. § 1332, because this is a civil action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

10. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this claim occurred in the Southern District of Florida.

**STATEMENT OF FACTS**

11. Guarantors I through IV have been associated with at least two other transactions with DDR Corp. and/or one of its affiliates.

12. As part of those transactions, Guarantors I through IV personally guaranteed, among other obligations, a Genghis Grill restaurant lease dated March 24, 2011, at another DDR Corp. managed shopping center called "The Point" in Greenville, South Carolina ("Greenville Lease").

13. Guarantors I through IV provided DDR Corp., which manages The Point on behalf of its owner, with personal financial statements dated September 22, 2010.

14. The personal financial statements dated September 22, 2010 state Guarantor I – IV's assets, liabilities, and net worth.

15. In or about June of 2011, in connection with the subject Lease (as hereinafter defined) and pursuant to the request and consent of Tenant and Guarantors I through IV, DDR agreed to use Guarantors I through IV's September 22, 2010 financial statements from the Greenville Lease to evaluate their ability to guarantee the current Lease.

16. On or about June 6, 2011, in connection with the subject Lease (as hereinafter defined), Guarantor V provided a personal financial statement stating Guarantor V's assets,

liabilities, and net worth (individually and collectively, with Guarantor I through IV's financial statements, the "Financial Statements"). Pursuant to the request and consent of Tenant and Guarantor V, DDR agreed to use Guarantor V's June 6, 2011 financial statement to evaluate its ability to guarantee the current Lease.

17. Guarantor I's Financial Statements state a total net worth of $4,247,200.00, an outside net worth (exclusive of interest in business) of $417,000.00, and liquid assets of $350,000.00.

18. Guarantor I's Financial Statements do not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

19. Guarantor II's Financial Statements state a total net worth of $4,248,700.00, an outside net worth (exclusive of interest in business) of $444,200.00, and liquid assets of $386,000.00.

20. Guarantor II's Financial Statements do not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

21. Guarantor III's Financial Statements state a total net worth of $4,012,700.00, an outside net worth (exclusive of interest in business) of $208,200.00, and liquid assets of $156,000.00.

22. Guarantor III's Financial Statements do not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

23. Guarantor IV's Financial Statements state a total net worth of $4,298,000.00, an outside net worth (exclusive of interest in business) of $343,500.00, and liquid assets of $300,000.00.

24. Guarantor IV's Financial Statements do not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

25. Guarantor V's Financial Statements indicate a total net worth of $619,600.00, an outside net worth (exclusive of interest in business) of $619,600.00 with liquid assets of $16,000.00. Guarantor V's Financial Statements also state a total of $161,000.00 of "cash on hand" and in banks.

26. Guarantor V's Financial Statements do not indicate that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

27. Upon information and belief, prior to executing the Guarantees, the Guarantors used estate and asset planning mechanisms to shield the assets listed on their Financial Statements from any type of judgment.

28. Upon information and belief, the Guarantors intentionally misrepresented the nature of and true ownership of the assets stated on the Financial Statements to induce DDR into entering into the Lease and Guarantees even though they knew that the assets listed were not owned personally by them and/or were otherwise shielded from any sort judgment or attachment proceeding.

29. Therefore, the Financial Statements contain material misrepresentations and/or material omissions, as Guarantors took no steps to inform DDR that the information in the Financial Statements needed to be updated to reflect any estate and asset planning mechanisms to shield the assets listed on their Financial Statements from any type of judgment.

30. On or about June 10, 2011, as part of its evaluation of Guarantors' creditworthiness and ability to pay, DDR evaluated the Financial Statements.

31. On or about June 20, 2011, DDR relied upon the Financial Statements, approved the Guarantors based on their Financial Statements, and negotiated a lease with Tenant subject to the personal guarantees of Guarantors.

32. On or about December 1, 2011, Tenant and DDR entered into a Lease (the "Lease") for a portion of the Shopping Center known as unit B-2580 containing approximately 4,800 square feet of commercial retail space (the "Premises") for an initial term of ten (10) years. A true and correct copy of the Lease is attached hereto as **Exhibit 1**.

33. In connection with the Lease, DDR and the Guarantors entered into five identical and individually executed Guarantee-Personal agreements, creating joint and several liability, whereby, "as a material inducement to and in consideration of" Landlord entering into the Lease with Tenant, Guarantors guaranteed the performance of Tenant's obligations under the Lease including payment of rent and all other amounts due and owing under the Lease (individually the "Guarantee" and collectively the "Guarantees"). True and correct copies of the Guarantees are attached hereto as **Exhibit 2**.[2]

34. As it was occupying the Premises, on or about January 15, 2013, Tenant was informed that its Rent Commencement Date was December 11, 2012.

35. On or about February 24, 2014 and prior to the end of the Lease term, Tenant abandoned the Premises and failed to pay rent.

36. On or about February 26, 2014, a Notice of No Surrender Accepted Letter (the "Notice") was sent to Tenant and Guarantors via certified mail return receipt requested, notifying

---

[2] Due to a scrivener's error, Guarantor I's, Guarantor II's, and Guarantor IV's last names are incorrectly spelled as "Bhatka" in the Lease and the Guarantees. Each of the Guarantees were notarized with each of the Guarantor's social security numbers listed in the signature block. To the extent required, DDR asks that the Court reform these documents to correct such scrivener's errors as such documents manifest the clear intent of the Parties.

Tenant and Guarantors that DDR's entry into the Premises was on Tenant's account, and that DDR fully intended to hold all responsible parties liable for the balance of the Lease term. A copy of the Notice is attached hereto as **Exhibit 3.**

37. On or about October 31, 2014, default notices citing delinquencies of $91,127.86 and notifying the recipients of the ten (10) day cure period prescribed by the Lease were sent to the Tenant, to the Guarantors, and to Genghis Grill Franchise Concepts, LP ("Franchisor") under the Lease.

38. On or about December 1, 2014, default notices citing delinquencies of $102,215.63 and notifying the recipients of the ten (10) day cure period were sent to the Tenant, to the Guarantors, and to the Franchisor (together, with the default notices described in Paragraph 15, the "Notices of Default"). Copies of the Notices of Default are attached hereto as **Exhibit 4.**

39. Thereafter, the ten (10) day cure period prescribed by the Lease and included in the Notices of Default passed without cure by the Tenant, the Guarantors, or the Franchisor.

40. The Guarantees provide that if Tenant defaults under the Lease, DDR can enforce any rights that it has under the Lease against the Guarantors or Tenant, or both.

41. Pursuant to Article XVI of the Lease, DDR is entitled to recover "expenses (including attorney fees, professional fees, costs of investigation and disbursements) incurred by Landlord in enforcing any or all of its rights hereunder, specifically including the cost of collecting sums due…plus an additional sum equal to ten percent (10%) of all such costs and expenses representing the cost of Landlord's administrative expense to enforce its rights under this Lease."

42. Pursuant to Article XVI of the Lease, DDR declares all rent due for the remainder of the Lease term immediately due and payable.

43. Despite marketing the Premises and using commercially reasonable efforts to re-let the Premises, DDR has been unable to re-let the Premises as of May 6, 2015.

44. As of the date of this Complaint, rent of $167,433.17 is due, and going forward, subject to DDR's obligations, rent will be accruing.

45. Per the terms of the Lease, as of May 6, 2015 Tenant and Guarantors owe DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in reletting the Premises, and punitive damages for fraud in an amount that is fair and just.

46. All conditions precedent to this action have been performed or have occurred.

**COUNT I**
**Breach of Contract (Tenant)**

47. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

48. This is a cause of action for breach of lease against Tenant, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

49. Tenant defaulted under the terms of the Lease by abandoning the Premises and by failing to pay rent and other associated charges when due.

50. As a direct and proximate cause of Tenant's breaches as alleged herein, DDR has been damaged, and as of May 6, 2015, Tenant owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, and DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT II**
**Action on Account**

51. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

52. DDR allowed the Tenant to use and occupy the Premises on account.

53. Tenant was required to pay rent and other charges in advance, on the first day of each calendar month.

54. Despite being required to pay rent and other expenses related to its occupancy of the Premises, Tenant failed to pay on the account.

55. As a direct and proximate result of Tenant's failure to pay on the account, DDR has been damaged, and as of May 6, 2015, Tenant owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT III**
**Unjust Enrichment of Tenant**

56. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

57. Tenant has been unjustly enriched by its use and occupancy of the Premises without full payment of its monetary obligations to DDR.

58. As a direct and proximate result of Tenant's conduct, DDR has been damaged, and as of May 6, 2015, Tenant owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT IV**
**Breach of Guarantee (Akash Bhakta – Guarantor I)**

59. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

60. This is a cause of action for breach of guarantee against Guarantor I, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

61. Tenant defaulted under the terms of the Lease, and otherwise injured DDR by failing to pay rent and other associated charges when due.

62. Guarantor I breached its Guarantee by failing to make the payments owed by Tenant to DDR.

63. As a direct and proximate cause of Guarantor I's breach as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor I owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT V**
**Breach of Guarantee (Chetan Bhakta – Guarantor II)**

64. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

65. This is a cause of action for breach of guarantee against Guarantor II, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

66. Tenant defaulted under the terms of the Lease and otherwise injured DDR by failing to pay rent and other associated charges when due.

67. Guarantor II breached its Guarantee by failing to make the payments owed by Tenant to DDR.

68. As a direct and proximate cause of Guarantor II's breach as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor II owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT VI**
**Breach of Guarantee (Ronak Parikh – Guarantor III)**

69. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

70. This is a cause of action for breach of guarantee against Guarantor III, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

71. Tenant defaulted under the terms of the Lease and otherwise injured DDR by failing to pay rent and other associated charges when due.

72. Guarantor III breached its Guarantee by failing to make the payments owed by Tenant to DDR.

73. As a direct and proximate cause of Guarantor III's breach as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor III owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT VII**
**Breach of Guarantee (Nikunj Bhakta – Guarantor IV)**

74. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

75. This is a cause of action for breach of guarantee against Guarantor IV, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

76. Tenant defaulted under the terms of the Lease and otherwise injured DDR by failing to pay rent and other associated charges when due.

77. Guarantor IV breached its Guarantee by failing to make the payments owed by Tenant to DDR.

78. As a direct and proximate cause of Guarantor IV's breach as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor IV owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT VIII**
**Breach of Guarantee (Ricardo Warman – Guarantor V)**

79. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

80. This is a cause of action for breach of guarantee against Guarantor V, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

81. Tenant defaulted under the terms of the Lease by failing to pay rent and other associated charges when due.

82. Guarantor V breached its Guarantee by failing to make the payments owed by Tenant to DDR.

83. As a direct and proximate cause of Guarantor V's breaches as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor V owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees,

additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT IX**
**Negligent and/or Intentional Misrepresentation (Guarantor I)**

84. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

85. This is a cause of action for negligent and/or intentional misrepresentation against Guarantor I, seeking actual and/or punitive damages in an amount to be proven at trial.

86. Guarantor I entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

87. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor I in its Financial Statements.

88. Guarantor I negligently and/or knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in the Financial Statements by failing to disclose that the listed assets were held in trust, are protected from any judgment through an estate or asset protection plan, and/or the amounts are otherwise materially misrepresented.

89. DDR reasonably relied on the misrepresentations in the Financial Statements in evaluating Guarantor I as a guarantor for the Lease and in execution of the Lease.

90. As a direct and proximate result of Guarantor I's negligent and/or intentional conduct as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor I owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT X**
**Negligent and/or Intentional Misrepresentation (Guarantor II)**

91. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

92. This is a cause of action for negligent and/or intentional misrepresentation against Guarantor II, seeking actual and punitive damages in an amount to be proven at trial.

93. Guarantor II entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

94. DDR's willingness to enter into both the Lease and the Guarantee was based upon material and fraudulent misrepresentations of Guarantor II in its Financial Statements.

95. Guarantor II negligently and/or knowingly made inaccurate and false representations and/or fraudulently omitted material information and/or failed to update prior representations in the Financial Statements by failing to disclose that the listed assets were held in trust, are protected from any judgment through an estate or asset protection plan, and/or the amounts are otherwise materially misrepresented.

96. DDR reasonably relied on the misrepresentations in the Financial Statements in evaluating Guarantor II as a guarantor for the Lease and in execution of the Lease.

97. As a direct and proximate result of Guarantor II's negligent and/or intentional conduct as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor II owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XI**
**Negligent and/or Intentional Misrepresentation (Guarantor III)**

98. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

99. This is a cause of action for negligent and/or intentional misrepresentation against Guarantor III, seeking actual and punitive damages in an amount to be proven at trial.

100. Guarantor III entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

101. DDR's willingness to enter into both the Lease and the Guarantee was based upon material and fraudulent misrepresentations of Guarantor III in its Financial Statements.

102. Guarantor III knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in the Financial Statements by failing to disclose that the listed assets were held in trust, are protected from any judgment through an estate or asset protection plan, and/or the amounts are otherwise materially misrepresented.

103. DDR reasonably relied on the misrepresentations in the Financial Statements in evaluating Guarantor III as a guarantor for the Lease and in execution of the Lease.

104. As a direct and proximate result of Guarantor III's negligent and/or intentional conduct as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor III owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XII**
**Negligent and/or Intentional Misrepresentation (Guarantor IV)**

105. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

106. This is a cause of action for negligent and/or intentional misrepresentation against Guarantor IV, seeking actual and punitive damages in an amount to be proven at trial.

107. Guarantor IV entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

108. DDR's willingness to enter into both the Lease and the Guarantee was based upon material and fraudulent misrepresentations of Guarantor IV in its Financial Statements.

109. Guarantor IV knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in the Financial Statements by failing to disclose that the listed assets were held in trust, are protected from any judgment through an estate or asset protection plan, and/or the amounts are otherwise materially misrepresented.

110. DDR reasonably relied on the misrepresentations in the Financial Statements in evaluating Guarantor IV as a guarantor for the Lease and in execution of the Lease.

111. As a direct and proximate result of Guarantor IV's negligent and/or intentional conduct as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor IV owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XIII**
**Negligent and/or Intentional Misrepresentation (Guarantor V)**

112. DDR incorporates the allegations made in Paragraphs 1–46 as though fully set forth herein.

113. This is a cause of action for negligent and/or intentional misrepresentation against Guarantor V, seeking actual and punitive damages in an amount to be proven at trial.

114. Guarantor V entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

115. DDR's willingness to enter into both the Lease and the Guarantee was based upon material and fraudulent misrepresentations of Guarantor V in its Financial Statements.

116. Guarantor V knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in the Financial Statements by failing to disclose that the listed assets were held in trust, are protected from any judgment through an estate or asset protection plan, and/or the amounts are otherwise materially misrepresented.

117. DDR reasonably relied on the misrepresentations in the Financial Statements in evaluating Guarantor V as a guarantor for the Lease and in execution of the Lease.

118. As a direct and proximate result of Guarantor V's negligent and/or intentional conduct as alleged herein, DDR has been damaged, and as of May 6, 2015, Guarantor V owes DDR the rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**WHEREFORE**, DDR demands relief against Tenant and Guarantors, jointly and severally as follows:

(1) As to Count I, judgment against Tenant for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(2) As to Count II, judgment against Tenant for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(3) As to Count III, judgment against Tenant for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(4) As to Count IV, judgment against Guarantor I for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(5) As to Count V, judgment against Guarantor II for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17,

plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(6) As to Count VI, judgment against Guarantor III for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(7) As to Count VII, judgment against Guarantor IV for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(8) As to Count VIII, judgment against Guarantor V for monetary damages, including unpaid rent, future/accelerated rent and associated charges permitted under the Lease in the current rental amount of $167,433.17, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(9) As to Count IX, judgment against Guarantor I for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(10) As to Count X, judgment against Guarantor II for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(11) As to Count XI, judgment against Guarantor III for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's, and punitive damages in an amount that is fair and just.

(12) As to Count XII, judgment against Guarantor IV monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(13) As to Count XIII, judgment against Guarantor V for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(14) Interest, statutory or otherwise, reasonable costs and further consequential damages and relief as the Court deems just and proper.

**DATED** on this the 7th day of May, 2015.

Respectfully submitted,

**MCDONALD HOPKINS LLC**

/s/ David Axelman
**DAVID AXELMAN**
Florida Bar No. 90872
Southeast Financial Center, Suite 2600
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 704-3990
Facsimile: (305) 704-3999
E-Mail: daxelman@mcdonaldhopkins.com

**RICHIK SARKAR**
Ohio Bar No. 0069993
***Pro Hac Vice Pending***
Fifth Third Center, Suite 2100
600 Superior Avenue, East
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-Mail: rsarkar@mcdonaldhopkins.com

*Counsel for Plaintiff DDR Homestead LLC*