**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 1:15-CV-21739-MARTINEZ/MCALILEY**

DDR HOMESTEAD LLC, a Delaware limited liability company,

Plaintiff,

v.

CHALAK-MIAMI 2, LLC d/b/a GENGHIS GRILL, a Delaware limited liability company; AKASH BHAKTA; CHETAN BHAKTA; RONAK PARIKH; NIKUNJ BHAKTA; and RICARDO WARMAN,

Defendants.
_______________________________________/

# AMENDED COMPLAINT

Plaintiff DDR Homestead LLC ("DDR"), for its Amended Complaint against Defendants Chalak-Miami 2, LLC d/b/a Genghis Grill ("Tenant") and Akash Bhakta, Chetan Bhakta, Ronak Parikh, Nikunj Bhakta, and Ricardo Warman (collectively, the "Guarantors"), alleges as follows:

## NATURE OF THE ACTION

1. This is an action to recover damages resulting from breach of a DDR lease, from breaches of guarantees benefiting DDR related to the rental of property at Homestead Pavilion in Homestead, Florida (the "Shopping Center") and from Guarantors' fraudulent inducement of DDR to contract based on Guarantors' material misrepresentations of the status of their assets and/or finances prior to entering into the Guarantees (as hereinafter defined) and prior to execution of the Lease (as hereinafter defined).

## THE PARTIES

2. DDR is the owner and landlord of the Shopping Center. DDR is a Delaware limited liability company with its principal place of business in Beachwood, Ohio. DDR's sole member is DDR Corp., an Ohio corporation that also manages the Shopping Center for Plaintiff DDR. Accordingly, Plaintiff DDR is an Ohio citizen for diversity jurisdiction purposes.

3. Tenant is a Delaware limited liability company that, upon information and belief, has a mailing address of 18900 Dallas Parkway, Suite #125, Dallas, TX 75287 with its registered agent having a mailing address of 11380 Prosperity Farms Road, #221E, Palm Beach Gardens, FL 33410. Tenant leased a single unit restaurant at the Shopping Center and it or its agent operated a Genghis Grill restaurant.

4. Akash Bhakta ("Guarantor I") is an individual who resides in Texas and is a guarantor.

5. Chetan Bhakta ("Guarantor II") is an individual who resides in Texas and is a guarantor.

6. Ronak Parikh ("Guarantor III") is an individual who resides in Texas and is a guarantor.

7. Nikunj Bhakta ("Guarantor IV") is an individual who resides in New Mexico and is a guarantor.

8. Ricardo Warman ("Guarantor V") is an individual who resides in Florida and is a guarantor.

## JURISDICTION AND VENUE

9. This Court has diversity jurisdiction under 28 U.S.C. § 1332, because this is a civil action between citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00.

10. Venue in this district is proper under 28 U.S.C. § 1391(b)(2) because a substantial portion of the events giving rise to this claim occurred in the Southern District of Florida.

## STATEMENT OF FACTS

11. Guarantors I through IV have been associated with at least two other transactions with DDR Corp. and/or one of its affiliates.

12. As part of those transactions, Guarantors I through IV personally guaranteed, among other obligations, a Genghis Grill restaurant lease dated March 24, 2011, at another DDR Corp. managed shopping center named "The Point" in Greenville, South Carolina ("Greenville Lease").

13. Guarantors I through IV each provided DDR Corp., which manages The Point on behalf of its owner, with their personal financial statements dated September 22, 2010 (each Guarantor's respective financial statement referred to individually as a "Financial Statement"). Each Financial Statement is titled "Personal Financial Statement" and identifies Guarantor I–IV's respective assets, liabilities, and net worth.

14. In or about June of 2011, in connection with the subject Lease (as hereinafter defined) and pursuant to the request, consent, and/or knowledge of each of Tenant and Guarantors I through IV, DDR, through its Leasing Director Anthony Pavli, agreed to use Guarantors I through IV's Financial Statements from the Greenville Lease to evaluate their ability to guarantee the subject Lease.

15. Each of Guarantors I through IV knew that DDR's decision whether to proceed with the subject Lease would be based in part on its review of their respective Financial Statements because each of Guarantor I through IV had previously engaged in the leasing process with DDR and understood that DDR's review of their Financial Statements would influence DDR's decision-making process.

16. On or about June 6, 2011, in connection with the subject Lease (as hereinafter defined), Guarantor V provided to DDR's Leasing Director, Anthony Pavli, a personal financial statement titled "Personal Financial Statement" that identifies Guarantor V's assets, liabilities, and net worth (individually, a "Financial Statement," and collectively with Guarantor I through IV's Financial Statements, the "Financial Statements"). Pursuant to the request, consent, and/or knowledge of Tenant and Guarantor V, DDR agreed to use Guarantor V's Financial Statement to evaluate his ability to guarantee the subject Lease. Guarantor V understood that DDR's review of his Financial Statement would influence DDR's decision-making process.

17. Guarantor I's Financial Statement states a total net worth of $4,247,200.00, an outside net worth (exclusive of interest in business) of $417,000.00, and liquid assets of $350,000.00.

18. Guarantor I's Financial Statement does not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

19. Guarantor II's Financial Statement states a total net worth of $4,248,700.00, an outside net worth (exclusive of interest in business) of $444,200.00, and liquid assets of $386,000.00.

20. Guarantor II's Financial Statement does not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

21. Guarantor III's Financial Statement states a total net worth of $4,012,700.00, an outside net worth (exclusive of interest in business) of $208,200.00, and liquid assets of $156,000.00.

22. Guarantor III's Financial Statement does not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

23. Guarantor IV's Financial Statement states a total net worth of $4,298,000.00, an outside net worth (exclusive of interest in business) of $343,500.00, and liquid assets of $300,000.00.

24. Guarantor IV's Financial Statement does not state that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

25. Guarantor V's Financial Statement states a total net worth of $619,600.00, an outside net worth (exclusive of interest in business) of $619,600.00, and liquid assets of $16,000.00. Guarantor V's Financial Statement also states a total of $161,000.00 of "cash on hand and in banks."

26. Guarantor V's Financial Statement does not indicate that any assets are held in trust or are otherwise protected from any judgment through any estate or asset protection plan.

27. In early February 2015, DDR learned that each of the Guarantors had used estate and asset planning mechanisms to shield the assets listed on their respective Financial Statements from any type of judgment, thereby rendering futile any attempt by DDR to execute on a potential judgment. Upon information and belief, each Guarantor did so prior to executing the Guarantees.

28. Upon information and belief, each of the Guarantors intentionally misrepresented the nature and true ownership of the assets identified in their respective Financial Statements to

induce DDR into entering into the Lease and Guarantees because they knew that the assets listed were not owned personally by them and/or were otherwise shielded from any sort of judgment or attachment proceeding. The Financial Statements contain material misrepresentations and/or material omissions because Guarantors took no steps to inform DDR that the information in their respective Financial Statements needed to be modified or updated to reflect any estate and asset planning mechanisms to shield the assets listed in their Financial Statements from any type of judgment. In failing to disclose Guarantors' estate and asset planning mechanisms, the Financial Statements effectively overstated their assets and misled DDR

29. Each of the Guarantors knew that the reason DDR required them to submit the Financial Statements was to enable DDR to evaluate whether Guarantors had sufficient collectible assets to satisfy a judgment in the event that Tenant breached the subject Lease. DDR would not have entered into the Lease, and therefore would not have incurred damages, had Guarantors disclosed that the assets were not personally held by the Guarantors and were protected from judgment against the Guarantors.

30. In submitting their respective Financial Statements to DDR's Leasing Department in June 2011, each of the Guarantors sought to gain improperly by obtaining the benefits of the subject Lease while rendering themselves judgment-proof, thereby vitiating what each of them knew to be the entire purpose of their respective guarantees.

31. On or about June 10, 2011, as part of its evaluation of Guarantors' creditworthiness and ability to pay, DDR evaluated the Financial Statements. In determining whether Guarantors had sufficient assets to cover the guaranteed liabilities, DDR conducted a reasonable investigation of Guarantors' assets by, among other things, obtaining financial statements, running credit checks, and/or conducting other asset searches. Despite its efforts,

DDR did not discover that the assets were not held personally by Guarantors until such assertions were made in February 2015.

32. On or about June 20, 2011, DDR relied upon each of the Financial Statements, approved the Guarantors based on their Financial Statements, and negotiated a lease with Tenant subject to the personal guarantees of Guarantors.

33. On or about December 1, 2011, Tenant and DDR entered into a Lease (the "Lease") for a portion of the Shopping Center known as unit B-2580 containing approximately 4,800 square feet of commercial retail space (the "Premises") for an initial term of ten (10) years. A true and correct copy of the Lease is attached hereto as **Exhibit 1**.

34. In connection with the Lease, DDR and the Guarantors entered into five identical and individually executed Guarantee-Personal agreements, creating joint and several liability, whereby, "as a material inducement to and in consideration of" Landlord entering into the Lease with Tenant, Guarantors guaranteed the performance of Tenant's obligations under the Lease, including payment of rent and all other amounts due and owing under the Lease (individually the "Guarantee" and collectively the "Guarantees"). True and correct copies of the Guarantees are attached hereto as **Exhibit 2**.[1]

35. As it was occupying the Premises, on or about January 15, 2013, Tenant was informed that its Rent Commencement Date was December 11, 2012.

36. On or about February 24, 2014 and prior to the end of the Lease term, Tenant abandoned the Premises and failed to pay rent.

[1] Due to a scrivener's error, Guarantor I's, Guarantor II's, and Guarantor IV's last names are incorrectly spelled as "Bhatka" in the Lease and the Guarantees. Each of the Guarantees were notarized with each of the Guarantor's social security numbers listed in the signature block. To the extent required, DDR asks that the Court reform these documents to correct such scrivener's errors as such documents manifest the clear intent of the Parties.

37. On or about February 26, 2014, a Notice of No Surrender Accepted Letter (the "Notice") was sent to Tenant and Guarantors via certified mail return receipt requested, notifying Tenant and Guarantors that DDR's entry into the Premises was on Tenant's account, and that DDR fully intended to hold all responsible parties liable for the balance of the Lease term. A copy of the Notice is attached hereto as **Exhibit 3.**

38. On or about October 31, 2014, default notices citing delinquencies of $91,127.86 and notifying the recipients of the ten (10) day cure period prescribed by the Lease were sent to the Tenant, to the Guarantors, and to Genghis Grill Franchise Concepts, LP ("Franchisor") under the Lease.

39. On or about December 1, 2014, default notices citing delinquencies of $102,215.63 and notifying the recipients of the ten (10) day cure period were sent to the Tenant, to the Guarantors, and to the Franchisor (together, with the default notices described in Paragraph 15, the "Notices of Default"). Copies of the Notices of Default are attached hereto as **Exhibit 4.**

40. Thereafter, the ten (10) day cure period prescribed by the Lease and included in the Notices of Default passed without cure by the Tenant, the Guarantors, or the Franchisor.

41. The Guarantees provide that if Tenant defaults under the Lease, DDR can enforce any rights that it has under the Lease against the Guarantors or Tenant, or both.

42. Pursuant to Article XVI of the Lease, DDR is entitled to recover "expenses (including attorney fees, professional fees, costs of investigation and disbursements) incurred by Landlord in enforcing any or all of its rights hereunder, specifically including the cost of collecting sums due…plus an additional sum equal to ten percent (10%) of all such costs and

expenses representing the cost of Landlord's administrative expense to enforce its rights under this Lease."

43. Pursuant to Article XVI of the Lease, DDR declares all rent due for the remainder of the Lease term immediately due and payable.

44. Despite marketing the Premises and using commercially reasonable efforts to re-let the Premises, DDR has been unable to re-let the Premises as of June 18, 2015.

45. As of the date of this Amended Complaint, rent of $178,525.36 is due, and going forward, subject to DDR's obligations, rent will be accruing.

46. Per the terms of the Lease, as of June 18, 2015 Tenant and Guarantors owe DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and punitive damages for fraud in an amount that is fair and just.

47. All conditions precedent to this action have been performed or have occurred.

**COUNT I**
**Breach of Contract (Tenant)[2]**

48. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

49. This is a cause of action for breach of lease against Tenant, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

50. Tenant defaulted under the terms of the Lease by abandoning the Premises and by failing to pay rent and other associated charges when due.

[2] This Amended Complaint drops the previously asserted claims against Tenant for Action on Account and for Unjust Enrichment because Defendants have asserted in responding to the original Complaint that they do not challenge the validity of the Lease. DDR reserves the right to reinstate those claims should Defendants contest the validity of the Lease.

51. As a direct and proximate cause of Tenant's breaches as alleged herein, DDR has been damaged, and as of June 18, 2015, Tenant owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, and DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT II**
**Breach of Guarantee (Akash Bhakta – Guarantor I)**

52. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

53. This is a cause of action for breach of guarantee against Guarantor I, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

54. Tenant defaulted under the terms of the Lease, and otherwise injured DDR by failing to pay rent and other associated charges when due.

55. Guarantor I breached its Guarantee by failing to make the payments owed by Tenant to DDR.

56. As a direct and proximate cause of Guarantor I's breach as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor I owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT III**
**Breach of Guarantee (Chetan Bhakta – Guarantor II)**

57. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

58. This is a cause of action for breach of guarantee against Guarantor II, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

59. Tenant defaulted under the terms of the Lease and otherwise injured DDR by failing to pay rent and other associated charges when due.

60. Guarantor II breached its Guarantee by failing to make the payments owed by Tenant to DDR.

61. As a direct and proximate cause of Guarantor II's breach as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor II owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT IV**
**Breach of Guarantee (Ronak Parikh – Guarantor III)**

62. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

63. This is a cause of action for breach of guarantee against Guarantor III, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

64. Tenant defaulted under the terms of the Lease and otherwise injured DDR by failing to pay rent and other associated charges when due.

65. Guarantor III breached its Guarantee by failing to make the payments owed by Tenant to DDR.

66. As a direct and proximate cause of Guarantor III's breach as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor III owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees,

additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT V**
**Breach of Guarantee (Nikunj Bhakta – Guarantor IV)**

67. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

68. This is a cause of action for breach of guarantee against Guarantor IV, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

69. Tenant defaulted under the terms of the Lease and otherwise injured DDR by failing to pay rent and other associated charges when due.

70. Guarantor IV breached its Guarantee by failing to make the payments owed by Tenant to DDR.

71. As a direct and proximate cause of Guarantor IV's breach as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor IV owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT VI**
**Breach of Guarantee (Ricardo Warman – Guarantor V)**

72. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

73. This is a cause of action for breach of guarantee against Guarantor V, seeking collection of unpaid rent, future/accelerated rent and other associated charges.

74. Tenant defaulted under the terms of the Lease by failing to pay rent and other associated charges when due.

75. Guarantor V breached its Guarantee by failing to make the payments owed by Tenant to DDR.

76. As a direct and proximate cause of Guarantor V's breaches as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor V owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, and any other amounts to be proven at trial.

**COUNT VII**
**Intentional Misrepresentation (Guarantor I)**

77. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

78. This is a cause of action for intentional misrepresentation against Guarantor I, seeking actual and/or punitive damages in an amount to be proven at trial.

79. Guarantor I entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

80. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor I in his Financial Statement.

81. Guarantor I knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor I.

82. In the event that the state of Guarantor I's assets had changed between the time that he submitted his Financial Statement in connection with the Greenville Lease and the time that he knew of DDR's reliance on his Financial Statement in connection with the subject Lease, Guarantor I had a duty to notify DDR. His failure to do so demonstrates his malicious and deceitful intent.

83. After conducting a reasonable investigation to verify the assets reflected in Guarantor I's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor I's Financial Statement in evaluating Guarantor I as a guarantor for the Lease and in executing the Lease.

84. As a direct and proximate result of Guarantor I's intentional conduct and/or intentional omissions as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor I owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT VIII**
**Negligent Misrepresentation (Guarantor I)**

85. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

86. This is a cause of action for negligent misrepresentation against Guarantor I, seeking actual and/or punitive damages in an amount to be proven at trial.

87. Guarantor I entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

88. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor I in his Financial Statement.

89. Guarantor I negligently made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor I.

90. After conducting a reasonable investigation to verify the assets reflected in Guarantor I's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor I's Financial Statement in evaluating Guarantor I as a guarantor for the Lease and in executing the Lease.

91. As a direct and proximate result of Guarantor I's negligent conduct as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor I owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT IX**
**Intentional Misrepresentation (Guarantor II)**

92. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

93. This is a cause of action for intentional misrepresentation against Guarantor II, seeking actual and/or punitive damages in an amount to be proven at trial.

94. Guarantor II entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

95. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor II in his Financial Statement.

96. Guarantor II knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor II.

97. In the event that the state of Guarantor II's assets had changed between the time that he submitted his Financial Statement in connection with the Greenville Lease and the time that he knew of DDR's reliance on his Financial Statement in connection with the subject Lease, Guarantor II had a duty to notify DDR. His failure to do so demonstrates his malicious and deceitful intent.

98. After conducting a reasonable investigation to verify the assets reflected in Guarantor II's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor II's Financial Statement in evaluating Guarantor II as a guarantor for the Lease and in executing the Lease.

99. As a direct and proximate result of Guarantor II's intentional conduct and/or intentional omissions as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor II owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-

letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT X**
**Negligent Misrepresentation (Guarantor II)**

100. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

101. This is a cause of action for negligent misrepresentation against Guarantor II, seeking actual and/or punitive damages in an amount to be proven at trial.

102. Guarantor II entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

103. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor II in his Financial Statement.

104. Guarantor II negligently made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor II.

105. After conducting a reasonable investigation to verify the assets reflected in Guarantor II's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor II's Financial Statement in evaluating Guarantor II as a guarantor for the Lease and in executing the Lease.

106. As a direct and proximate result of Guarantor II's negligent conduct as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor II owes DDR the rental

amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XI**
**Intentional Misrepresentation (Guarantor III)**

107. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

108. This is a cause of action for intentional misrepresentation against Guarantor III, seeking actual and/or punitive damages in an amount to be proven at trial.

109. Guarantor III entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

110. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor III in his Financial Statement.

111. Guarantor III knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor III.

112. In the event that the state of Guarantor III's assets had changed between the time that he submitted his Financial Statement in connection with the Greenville Lease and the time that he knew of DDR's reliance on his Financial Statement in connection with the subject Lease, Guarantor III had a duty to notify DDR. His failure to do so demonstrates his malicious and deceitful intent.

113. After conducting a reasonable investigation to verify the assets reflected in Guarantor III's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor III's Financial Statement in evaluating Guarantor III as a guarantor for the Lease and in executing the Lease.

114. As a direct and proximate result of Guarantor III's intentional conduct and/or intentional omissions as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor III owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XII**
**<u>Negligent Misrepresentation (Guarantor III)</u>**

115. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

116. This is a cause of action for negligent misrepresentation against Guarantor III, seeking actual and/or punitive damages in an amount to be proven at trial.

117. Guarantor III entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

118. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor III in his Financial Statement.

119. Guarantor III negligently made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the

listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor III.

120. After conducting a reasonable investigation to verify the assets reflected in Guarantor III's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor III's Financial Statement in evaluating Guarantor III as a guarantor for the Lease and in executing the Lease.

121. As a direct and proximate result of Guarantor III's negligent conduct as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor III owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XIII**
**<u>Intentional Misrepresentation (Guarantor IV)</u>**

122. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

123. This is a cause of action for intentional misrepresentation against Guarantor IV, seeking actual and/or punitive damages in an amount to be proven at trial.

124. Guarantor IV entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

125. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor IV in his Financial Statement.

126. Guarantor IV knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are

protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor IV.

127. In the event that the state of Guarantor IV's assets had changed between the time that he submitted his Financial Statement in connection with the Greenville Lease and the time that he knew of DDR's reliance on his Financial Statement in connection with the subject Lease, Guarantor IV had a duty to notify DDR. His failure to do so demonstrates his malicious and deceitful intent.

128. After conducting a reasonable investigation to verify the assets reflected in Guarantor IV's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor IV's Financial Statement in evaluating Guarantor IV as a guarantor for the Lease and in executing the Lease.

129. As a direct and proximate result of Guarantor IV's intentional conduct and/or intentional omissions as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor IV owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

## COUNT XIV
## Negligent Misrepresentation (Guarantor IV)

130. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

131. This is a cause of action for negligent misrepresentation against Guarantor IV, seeking actual and/or punitive damages in an amount to be proven at trial.

132. Guarantor IV entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

133. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor IV in his Financial Statement.

134. Guarantor IV negligently made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor IV.

135. After conducting a reasonable investigation to verify the assets reflected in Guarantor IV's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor IV's Financial Statement in evaluating Guarantor IV as a guarantor for the Lease and in executing the Lease.

136. As a direct and proximate result of Guarantor IV's negligent conduct as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor IV owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XV**
**Intentional Misrepresentation (Guarantor V)**

137. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

138. This is a cause of action for intentional misrepresentation against Guarantor V, seeking actual and/or punitive damages in an amount to be proven at trial.

139. Guarantor V entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

140. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor V in his Financial Statement.

141. Guarantor V knowingly made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor V.

142. After conducting a reasonable investigation to verify the assets reflected in Guarantor V's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor V's Financial Statement in evaluating Guarantor V as a guarantor for the Lease and in executing the Lease.

143. As a direct and proximate result of Guarantor V's intentional conduct and/or intentional omissions as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor V owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**COUNT XVI**
**Negligent Misrepresentation (Guarantor V)**

144. DDR incorporates the allegations made in Paragraphs 1–47 as though fully set forth herein.

145. This is a cause of action for negligent misrepresentation against Guarantor V, seeking actual and/or punitive damages in an amount to be proven at trial.

146. Guarantor V entered into a Guarantee with DDR as a material inducement to, and in consideration of, DDR entering into the Lease with Tenant.

147. DDR's willingness to enter into both the Lease and the Guarantee was based upon the material and fraudulent misrepresentations of Guarantor V in his Financial Statement.

148. Guarantor V negligently made inaccurate and false representations—and/or fraudulently omitted material information and/or failed to update prior representations—in his Financial Statement by failing to disclose that the listed assets were held in trust and/or are protected from any judgment through an estate or asset protection plan, thereby rendering the listed amounts materially misleading and rendering futile any attempt to execute on a judgment against Guarantor V.

149. After conducting a reasonable investigation to verify the assets reflected in Guarantor V's Financial Statement, DDR reasonably relied on the misrepresentations in Guarantor V's Financial Statement in evaluating Guarantor V as a guarantor for the Lease and in executing the Lease.

150. As a direct and proximate result of Guarantor V's negligent conduct as alleged herein, DDR has been damaged, and as of June 18, 2015, Guarantor V owes DDR the rental amount of $178,525.36, plus accelerated rent in an amount to be determined at trial, plus

attorneys' fees, additional interest, costs, DDR's expenses in re-letting the Premises, punitive damages in an amount that is fair and just, and any other amounts to be proven at trial.

**WHEREFORE**, DDR demands relief against Tenant and Guarantors, as follows:

(1) As to Count I, judgment against Tenant for monetary damages, including unpaid rent and associated charges permitted under the Lease in the current rental amount of $178,525.36, plus future/accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(2) As to Count II, judgment against Guarantor I, jointly and severally with Guarantors II–V, for monetary damages, including unpaid rent and associated charges permitted under the Lease in the current rental amount of $178,525.36, plus future/accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(3) As to Count III, judgment against Guarantor II, jointly and severally with Guarantors I, III, IV, and V, for monetary damages, including unpaid rent and associated charges permitted under the Lease in the current rental amount of $178,525.36, plus future/accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(4) As to Count IV, judgment against Guarantor III, jointly and severally with Guarantors I, II, IV, and V, for monetary damages, including unpaid rent and associated charges permitted under the Lease in the current rental amount of $178,525.36, plus future/accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(5) As to Count V, judgment against Guarantor IV, jointly and severally with Guarantors I, II, III, and V, for monetary damages, including unpaid rent and associated charges permitted under the Lease in the current rental amount of $178,525.36, plus future/accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(6) As to Count VI, judgment against Guarantor V, jointly and severally with Guarantors I–IV, for monetary damages, including unpaid rent and associated charges permitted under the Lease in the current rental amount of $178,525.36, plus future/accelerated rent in an amount to be determined at trial, plus attorneys' fees, costs, and DDR's expenses in re-letting the Premises.

(7) As to Counts VII and VIII, judgment against Guarantor I, jointly and severally with Guarantors II–V, for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(8) As to Counts IX and X, judgment against Guarantor II, jointly and severally with Guarantors I, III, IV, and V, for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(9) As to Counts XI and XII, judgment against Guarantor III, jointly and severally with Guarantors I, II, IV, and V, for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's, and punitive damages in an amount that is fair and just.

(10) As to Count XIII and XIV, judgment against Guarantor IV, jointly and severally with Guarantors I, II, III, and V, for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(11) As to Count XV and XVI, judgment against Guarantor V, jointly and severally with Guarantors I–IV, for monetary damages, in an amount to be determined at trial, plus attorneys' fees, costs, DDR's expenses, and punitive damages in an amount that is fair and just.

(12) Interest, statutory or otherwise, reasonable costs and further consequential damages and relief as the Court deems just and proper.

**DATED** on this 22nd day of June, 2015.

Respectfully submitted,

**MCDONALD HOPKINS LLC**

/s/ Richik Sarkar
**RICHIK SARKAR**
Ohio Bar No. 0069993
***Admitted Pro Hac Vice***
Fifth Third Center, Suite 2100
600 Superior Avenue, East
Cleveland, Ohio 44114
Telephone: (216) 348-5400
Facsimile: (216) 348-5474
E-Mail: rsarkar@mcdonaldhopkins.com

**DAVID AXELMAN**
Florida Bar No. 90872
Southeast Financial Center, Suite 2600
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 704-3990
Facsimile: (305) 704-3999
E-Mail: daxelman@mcdonaldhopkins.com

***Counsel for Plaintiff DDR Homestead LLC***

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing Amended Complaint was filed electronically with the Clerk of the Court using CM/ECF on June 22, 2015, causing a Notice of Electronic filing to be sent to all counsel of record.

/s/ David Axelman
**DAVID AXELMAN**